Argued December 10, 1936; affirmed January 19, 1937

# EAST SIDE MILL & LUMBER CO. *v.* SOUTHEAST PORTLAND LUMBER CO. ET AL.

(64 P. (2d) 625)

Department 2.

*Leo J. Hanley,* of Portland (Cookingham & Hanley, R. G. McCarty, and Ridgway, Johnson & Kendall, all of Portland, on the brief), for appellant.

*L. J. Balbach* and *Wendell K. Phillips,* both of Portland (Sheppard & Phillips and L. J. Balbach, all of Portland, on the brief), for respondent.

BAILEY, J. East Side Mill and Lumber Company as plaintiff recovered judgment against the defendant Southeast Portland Lumber Company in an action tried to the court without the intervention of a jury, from which judgment the defendant corporation has appealed.

One of the principal assignments of error is based upon the court's failure to find and adjudge that the action was barred by the statute of limitations. The original complaint was filed on October 17, 1931, within six years from the date when the cause of action accrued. The amended complaint, however, was not filed

until April 27, 1934, after the expiration of such six-year period. The defendant corporation contends that the amended complaint sets forth a new cause of action, different from that alleged in the original pleading, and that such amended complaint therefore does not relate back to the date of the commencement of the action and relieve against the bar of the statute of limitations. It will therefore be necessary, in passing upon this question, to refer to and quote from both the original and the amended complaint. In both of those pleadings Southeast Portland Lumber Company and A. J. Dwyer were named as defendants and recovery was sought against them jointly. Judgment of involuntary nonsuit was granted in favor of Dwyer and against the plaintiff.

In the original complaint the cause of action against the defendants was alleged as follows:

"That heretofore and between the 21st day of January, 1924, and the 12th day of May, 1927, plaintiff, at the special instance and request of the defendants, performed work, labor and services for the defendants, furnished goods, wares and merchandise and loaned and advanced to the defendants, money in the sum of $13,939.12, and all of which work, labor and services, said goods, wares and merchandise and said money, were furnished and delivered to the defendants at their special instance and request, no part of which has been paid save and except the sum of $2,274.55, paid October 19, 1925; and the further sum of $432.70, paid September 12, 1927; and that there is now due, owing and unpaid from defendants to plaintiff the sum of $11,231.87, no part of which has been paid, although the same is long past due, and which said sum the defendants and each of them fail, refuse and neglect to pay."

Thereafter a motion was filed by attorneys for the defendant corporation to make the complaint more

definite and certain (1) by requiring the plaintiff to set forth the items of the account going to make up the sum of $13,939.12; (2) by setting forth "what work, if any, what labor, if any, and what services, if any, were performed by the plaintiff for the defendants"; (3) by setting forth the dates upon which the alleged labor was performed and the services were furnished; (4) by setting forth what goods, wares and merchandise, if any, were furnished; (5) by alleging the dates upon which goods, wares and merchandise were sold; (6) by setting forth what moneys were loaned and advanced to the defendants; and (7) by setting forth the dates of such alleged advances.

Subsequently, and pursuant to a stipulation between counsel for the litigants, the amended complaint here involved was filed, with paragraphs IV and V thereof reading as follows:

"IV

"That heretofore, between the 21st day of January, 1924, and the 14th day of March, 1927, at the special instance and request of the above named defendants, the plaintiff performed work, labor and services for the said defendants, and delivered and furnished to them goods, wares and merchandise and loaned and advanced to said defendants certain sums of money; in the aggregate amount of $45,852.29.

"That from time to time during the period aforesaid, as of the dates upon which work, labor and services were performed, goods, wares and merchandise delivered, and moneys loaned to said defendants, the said defendants were charged therefor upon a mutual, open and current account containing reciprocal demands; that the amounts set forth in said account were reasonable, and the said defendants agreed to pay the amounts set forth in said account. That from time to time during the period aforesaid, certain allowances by way of credit were made to the defendants upon said account; that during said period, also, this

plaintiff purchased from said defendants certain quantities of lumber, for which the said defendants were credited upon said account, and that from time to time during said period the defendants made payments upon said account, all of which credits were agreed by the parties hereto to constitute offsets against the charges due plaintiff for goods, wares and merchandise, work, labor and services, and money loaned, as hereinabove set forth. That the said defendants, and each of them, at all times had full knowledge of said account and acquiesced therein, and the credits hereinabove mentioned were understood by said defendants, and each of them, to constitute a part of said account, and when the transactions out of which said credits arose took place, said credits were applied upon said account with the knowledge of and at the special instance and request of said defendants; a copy of said account being hereto attached, marked Exhibit 'a', and made a part hereof.

## "V.

"That on the 19th day of October, 1925, the said defendants paid the sum of $2,274.55 on said account, and on the 12th day of September, 1927, said defendants paid the sum of $432.70 thereon, and that there is now due and owing upon said account from said defendants, and each of them, to this plaintiff the sum of $11,231.87, together with interest at six per cent per annum from the 14th day of March, 1927, until paid."

Attached as Exhibit "A" to the amended complaint is an itemized statement showing the dates when goods, wares and merchandise were sold by the plaintiff to the defendant Southeast Portland Lumber Company, the dates and amounts of money loaned, freight paid, and the amounts of credit allowed the plaintiff with the defendant corporation. This itemized statement showed a balance of $11,231.87, which was the amount alleged in the original and amended complaints as being the defendants' indebtedness to plaintiff.

The question of the bar of the statute of limitations is raised by the defendants' third further and separate defense, in the following language: "That the cause of action set forth therein did not accrue within six years before the commencement of this action."

1. Some doubt is cast by the respondent upon the sufficiency of the plea in regard to the bar of the statute of limitations. The contention in that respect is that the answer to the amended complaint should have alleged that the cause of action set forth in that pleading was a different one from that alleged in the original complaint and that since it was a new and different cause of action the amended complaint was not filed within time. This objection to the sufficiency of that affirmative defense does not appear to have been urged in the trial court, and we shall therefore treat the answer as sufficient to present such defense.

In 1 C. J. S., "Actions", § 8, in discussion of the term "cause of action" it is said:

" 'Cause of action' is a term of varying and doubtful meaning; and because of its many different and delicate shades of meaning according to the circumstances in which it is used, the courts have found it difficult to give any general definition of the term, and perhaps no definition could be framed which would be entirely free from criticism, although it has been said that there is no legal expression the meaning of which is more clearly apparent.

\* \* \* \* \*

"A cause of action has been briefly defined, in a general sense, as a claim which may be enforced; matter for which an action may be brought; the subject matter of a controversy; the subject matter upon which the plaintiff grounds his right of recovery; the ground on which an action may be maintained or sustained; that which produces or affects the result complainted of; or which produces the necessity for bringing the action; the ground or reason for the action."

With reference to the meaning of the term "cause of action", in 1 Am. Jur., "Actions", § 2, we find:

"What is a cause of action is not easily defined, and the authorities have laid down no thoroughly satisfactory and all-embracing definition. Many authorities define a cause of action as being the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. The facts which comprise the cause of action are those which, if traversed, the plaintiff is obliged to prove in order to obtain judgment, or those facts which the defendant would have the right to traverse. Again, it has been variously said that a cause of action consists of a right belonging to one person and some wrongful act or omission by another by which that right has been violated, or of the facts which establish the existence of that right and that delict, or which give rise as a matter of law to an obligation which the plaintiff may enforce against the defendant. A cause of action has also been defined as the subject of an action, the wrong for which a remedy is prescribed, that which produces or effects the result complained of, or the right to prosecute an action with effect."

Probably one of the most concise and helpful definitions is found in Pomeroy's Code Remedies (5th Ed.), § 347, reading thus:

"Every judicial action must therefore involve the following elements: a primary right possessed by the plaintiff, and a corresponding primary duty devolving upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself. Every action, however complicated or however simple, must contain these essential elements. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term, and as it is used in the codes of the several states. * * * The cause of

action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong.''

■■ A cause of action and a right of action are not synonymous. A right of action ''arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant''. A right of action is a right to bring suit in a case and may be taken away by the running of the statute of limitations. It arises only where there is a cause of action. So also should causes of action be distinguished from remedies. The one precedes and gives rise to the other, ''but they are separate and distinct from each other and are governed by different rules and principles'': 1 Am. Jur., ''Actions,'' § 3; Pomeroy, Code Remedies, § 346; 1 C. J. S., ''Actions,'' § 8.

We shall now consider the nature of an amendment which constitutes a new or different cause of action, in so far as the statute of limitations is concerned. In referring to this question it is said in *United States v. Memphis Cotton Oil Co.,* 288 U. S. 62, 67 (77 L. Ed. 619, 53 S. Ct. 278):

''The general rule is said to be that an amendment of a pleading will take effect by relation and thus relieve against the bar of an intervening limitation if the identity of the cause of action is still substantially the same, but that the limitation will prevail if under the guise of an amendment there is the substitution of a new cause of action in place of another wholly different.''

Similarly the court observed, in *Seaboard Air Line Ry. v. Renn,* 241 U. S. 290, 293 (60 L. Ed. 1006, 36 S. Ct. 567), that:

''If the amendment merely expanded or amplified what was alleged in support of the cause of action al-

ready asserted, it related back to the commencement of the action and was not affected by the intervening lapse of time."

In *New York Central R. R. v. Kinney,* 260 U. S. 340 (67 L. Ed. 294, 43 S. Ct. 122), Kinney brought an action against the railroad company for personal injuries suffered by him. After several trials and about seven and one-half years after the suit was begun, he was allowed to amend his complaint by alleging that at the time of the collision he and the defendant were engaged in interstate commerce. After quoting the excerpt above set out from *Seaboard Air Line Ry. v. Renn,* supra, and also quoting from *Seaboard Air Line Ry. v. Koennecke,* 239 U. S. 352, 354 (60 L. Ed. 324, 36 S. Ct. 126), to the effect that "the facts constituting the tort were the same, whichever law gave then that effect", the court remarked:

"Of course an argument can be made on the other side, but when a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of opinion that a liberal rule should be applied."

*Missouri, Kansas & Texas Ry. v. Wulf,* 226 U. S. 570 (57 L. Ed. 355, 33 S. Ct. 135, Ann. Cas. 1914 B, 134), involved an action instituted by plaintiff in her individual capacity. She was, however, permitted, after the statute of limitations would have barred another action, to amend so as to sue as administratrix under the federal employers' liability act. The court, with reference to the amendment, stated:

"Nor do we think it was equivalent to the commencement of a new action, so as to render it subject to the two years' limitation prescribed by § 6 of the em-

ployers' liability act. The change was in form rather than in substance. Stewart v. Baltimore & Ohio R. R. Co., 168 U. S. 445. It introduced no new or different cause of action, nor did it set up any different state of facts as a ground of action, and therefore it related back to the beginning of the suit.''

■ The amended complaint ''merely expanded or amplified'' what was alleged in the original complaint in support of the plaintiff's cause of action against the defendants. The filing of this amended complaint was in response to defendants' motion to make the allegations of the initial pleading more definite and certain, and was pursuant to a stipulation between counsel for the litigants permitting it to be filed. In both these pleadings it is alleged that between certain dates the plaintiff at the special instance and request of the defendants performed work, labor and services for the defendants and furnished and delivered to the defendants goods, wares and merchandise and loaned and advanced to said defendants certain sums of money. In the original complaint it is alleged that this was done between January 21, 1924, and May 12, 1927, while in the amended complaint that period is stated as January 21, 1924, to March 14, 1927, approximately two months less than the time mentioned in the former pleading. In both original and amended pleadings the claim asserted against the defendants is the same, to wit, $11,231.87. The subject matter of the controversy is the same in both complaints and the identity of the cause of action remains substantially unchanged. In both the original and the amended complaint the plaintiff gives the defendants credit for a payment of $2,274.55 on account, as of October 19, 1925, and another payment of $432.70 as of September 12, 1927.

In *Richardson v. Investment Co.*, 124 Or. 569 (264 P. 458, 265 P. 1117), the same question was involved that is here presented, and in that instance it was held that the plaintiff did not "introduce a new cause of action in changing from one upon express contract to one upon *quantum meruit*". The court quoted with approval from 31 Cyc. 430 to the effect that except in jurisdictions which do not permit amendments that change the form of action, it is generally held that so long as the cause of action itself is not changed it is permissible to change by amending the form of action in an action *ex contractu* to a different form of action *ex contractu*, and that an action on an implied contract may be changed to one on express contract, and *vice versa*. This court in the above case further said: "The action still arose out of contract and involved the same sidewalk. No change was made in the demand for payment. Unquestionably the judgment obtained in one action would be a bar to the prosecution of the other." That decision was approved in *Birkemeier v. Knobel*, 149 Or. 292, 312 (40 P. (2d) 694).

We hold that "the identity of the cause of action" as set forth in the amended complaint is substantially unchanged from that alleged in the original complaint; that recovery upon the original complaint would have barred recovery upon the amended pleading; that the measure of recovery is the same in each case; that substantially the same evidence would support both pleadings; and that the allegations of each are subject to the same defenses. Such are the tests listed in 37 C. J. 1076 for determining the identity of causes of action. The cause of action set forth in the amended complaint was not a new or different one from that alleged in the original complaint.

378

The appellant relies to a great extent upon the decision of this court in *Foste v. Standard Insurance Company*, 26 Or. 449 (38 P. 617), where it was held that the allegations stating a cause of action for labor and services required different evidence in support thereof from that necessary to support a cause of action on account stated. The trial court in that case admitted, over the defendant's objection, evidence tending to show that an account had been stated between the parties, and after defendant's counsel had made his arguments to the jury, the plaintiff was permitted, over objection by defendant's counsel, to amend his complaint to allege a stated account. This court reversed the circuit court and held that under the allegations of the complaint evidence of a stated account could not be admitted. The reasoning of the opinion was that entirely different evidence was required to prove an open account from that necessary to establish a stated account, and it was strongly intimated that the amendment allowed by the trial court constituted a new cause of action. That decision is reviewed and explained in *Ibach v. Jackson*, 148 Or. 92, 115 (35 P. (2d) 672). If the language used in *Foste v. Standard Insurance Co.*, supra, in regard to a new cause of action, could in any wise be applicable to the case before us, nevertheless the strictness of the rule to be inferred from that decision has been materially relaxed in *Richardson v. Investment Co.*, supra.

■ During the cross-examination of J. J. Miller, a witness produced on behalf of the plaintiff, counsel for defendant had him identify an itemized statement of account prepared by the witness from some journal entries of East Side Mill and Lumber Company. This document, except the last page thereof, appears to be the account between that company and A. J. Dwyer

personally, covering the period between January 18, 1915, and October 19, 1925. The last page purports to be a summary of dealings between J. P. Miller and A. J. Dwyer individually, in relation to purchase of stock in East Side Mill and Lumber Company by them from the Mowreys. After examining the witness at some length, counsel for defendant offered these account sheets in evidence. In ruling upon the objection of plaintiff to their admission, the court said: "I think we have enough trouble in here in the accounts of the Southeast Portland Lumber Company, without going into the personal account of Mr. Dwyer, I will sustain the objection."

No showing was made by the defendant as to what was sought to be proved by this statement of account and summary. It is now contended by the defendant that on the last sheet of the statement is a credit of $5,425.45 to A. J. Dwyer individually, and that if the summary of account on this last sheet had been admitted in evidence it might have tended to show that such credit should have been given to Southeast Portland Lumber Company instead of Dwyer individually. We can find nothing in the proffered exhibit to substantiate this assertion. Moreover, the defendant had cross-examined the witness Miller in detail as to the itemized statement and the witness had definitely denied that the amount should have been credited to the defendant corporation rather than Dwyer. There was nothing contained in the statement tending to contradict this testimony. No error was committed in excluding from the record the itemized statement or the summary sheet.

On November 15, 1925, the plaintiff paid to Northwestern National Bank the sum of $1,500, which was by that bank applied on the individual account of A.

J. Dwyer. It is now asserted by the appellant that the court erred in charging this amount to the defendant corporation. In this connection it must be borne in mind that on October 19 of that same year the plaintiff gave credit to the defendant corporation for the sum of $2,274.55 which grew out of dealings between J. P. Miller and A. J. Dwyer individually, as above explained. This last credit, as testified by plaintiff's witness, was given to the defendant corporation because the books between plaintiff and Dwyer individually had been closed. When the above mentioned $1,500 was paid, that amount likewise was charged to the defendant corporation for the same reason. In answer to the question why this charge was made against the defendant corporation, J. J. Miller testified: "Well, Mr. Dwyer being practically the sole owner of the Southeast Portland, I did that, that had been a practice between ourselves." No evidence was offered contradicting this explanation. Moreover, the defendants admitted in their answer that, "said A. J. Dwyer conducted the business of said Southeast Portland Lumber Company as his sole and individual business". The record further shows that the defendant corporation had knowledge of this charge either when it was entered or shortly thereafter, and made no objection. The charge against the defendant corporation in this respect stands on the same basis as the plaintiff's credit of $2,274.55 to that defendant. This case was tried as an action at law and there is sufficient evidence to support the court's finding that the $1,500 was properly chargeable to the defendant corporation.

■ The final assignment of error is based on the refusal of the trial court to abate the action until the plaintiff had paid certain delinquent taxes. The same position was taken by Dwyer as defendant in *East Side Mill and*

*Lumber Company v. Dwyer Logging Company et al.,*
page 339, supra (64 P. (2d) 89), and we ruled adversely
to his contention. The same reasoning applies in this
case, and we hold that this assignment of error is with-
out merit.

■ The plaintiff asks in its brief that we impose a
penalty of ten per cent of the amount of its recovery
against the defendant because of the delay caused by
that corporation in its appeal of this case. The motion
to that effect is based upon § 7-514, Oregon Code 1930.
We do not consider this a frivolous appeal, and the
motion therefore is denied.

The judgment is affirmed.

BEAN, C. J., and RAND and ROSSMAN, JJ., concur.