**GOLD SEAL CO.**

v.

**WEEKS, Secretary of Commerce et al.**
**No. 11631.**

United States Court of Appeals
For the District of Columbia Circuit.
Decided Jan. 7, 1954.

———◆———

Mr. Edward B. Beale, Washington, D. C., Mr. Maurice M. Moore, Minneapolis, Minn., on the brief, for appellant.

Mr. Francis C. Browne, Washington, D. C., Messrs. William E. Schuyler, Jr. and Andrew B. Beveridge, Washington, D. C., on the brief, for appellee S. C. Johnson & Son, Inc.

Mr. E. L. Reynolds, Solicitor, United States Patent Office, for appellees Sinclair Weeks, Secretary of Commerce, and Robert C. Watson, Commissioner of Patents.

Before STEPHENS, Chief Judge, and WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

STEPHENS, Chief Judge.

This is a motion by the appellee, S. C. Johnson & Son, Inc., hereafter referred to as Johnson & Son, to dismiss an appeal from a purported final judgment of the United States District Court for the District of Columbia entered purportedly, in accordance with 28 U.S.C. § 1291 (Supp.1952) and Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C. A., as a final judgment upon one of a plurality of claims for relief. The judgment was entered in an action, filed by the appellant Gold Seal Company, hereafter referred to as Gold Seal, under Rev.Stat. § 4915, 35 U.S.C. § 63 (1946) (in its present form 66 Stat. 803 (1952), 35 U.S.C.A. § 145 (1952 Supp.)), and under 60 Stat. 435 (1946), 15 U.S.C. § 1071 (1946), seeking an adjudication authorizing the Commissioner of Patents to register a trade-mark. The motion to dismiss the appeal is upon the ground that the judgment does not finally adjudicate one of a plurality of claims for relief within the meaning of Rule 54(b) and is not a final decision within the meaning of that phrase as used in Title 28, Section 1291, i. e. is not a final disposition of the entire action. The appellant contends that the judgment satisfies the requirements of 28 U.S.C. § 1291 and Rule 54(b). The dispute in essence reduces itself to the question whether or not the action presents a plurality of claims upon one of which, as a distinct claim, the judgment sought to be reviewed was entered. For the reasons set forth below, we conclude that the appeal must be dismissed.

**I**

An understanding of the question presented requires an acquaintance with certain of the provisions of the Trade-Mark Act of July 5, 1946, 60 Stat. 427, 15 U.S.C.A. § 1051 et seq., hereafter sometimes referred to as the Act, and with the pleadings and proceedings in the District Court which led to the entry

1. Section 1. The owner of a trade-mark used in commerce may register his trade-mark under this Act on the principal register hereby established:
  (a) By filing in the Patent Office—
  (1) a written application, in such form as may be prescribed by the Commissioner, verified by the applicant, or by a member of the firm or an officer of the corporation or association applying, specifying applicant's domicile and citizenship, the date of applicant's first use of the mark, the date of applicant's first use of the mark in commerce, the goods in connection with which the mark is used and the mode or manner in which the mark is used in connection with such goods, and including a statement to the effect

of the judgment in question. The pertinent provisions of the Act are set forth in the margin.[1] Primarily involved are the provisions of Section 2(e) (1), which, when read in connection with the introductory language of that section, forbids refusal of registration of a trade-mark by which the goods of the applicant may be distinguished from the goods of others unless it, when applied to the goods of the applicant, is merely descriptive or is deceptively misdescriptive of them, and the provisions of Section 2(f) providing that, except as expressly excluded in paragraphs (a), (b), (c), and (d) of the Section, nothing therein shall prevent the registration of a mark used by the applicant which has become distinctive of his goods in commerce.

The complaint of Gold Seal filed in the District Court alleges, so far as here pertinent, in substance and effect that:

Gold Seal, a corporation of North Dakota, is the sole owner of a trade-mark, "Glass Wax", acquired [at a date not made certain in the complaint] from certain predecessors in interest. Such predecessors and Gold Seal prior to September 1945, and Gold Seal alone thereafter, offered for sale and sold in commerce a certain glass cleaner and polish under the trade-mark described, the same having been adopted as an "arbitrary, fanciful and distinctive" word combination or symbol to designate said glass cleaner and polish. Gold Seal and its predecessors widely advertised and promoted the sale of the glass cleaner and polish under said trade-mark and the same is associated with Gold Seal's goods and means, and is understood to mean, that the goods described come from Gold Seal; and the goods so sold under said trade-mark have acquired a wide and enviable reputation. The trade-mark "Glass Wax" is "arbitrary, fanciful and distinctive" of Gold Seal's goods in commerce, has

---

that the person making the verification believes himself, or the firm, corporation, or association in whose behalf he makes the verification, to be the owner of the mark sought to be registered, that the mark is in use in commerce, and that no other person, firm, corporation, or association, to the best of his knowledge and belief, has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as might be calculated to deceive: * * *

(2) a drawing of the mark; and

(3) such number of specimens or facsimiles of the mark as actually used as may be required by the Commissioner.

(b) By paying into the Patent Office the filing fee.

(c) By complying with such rules or regulations, not inconsistent with law, as may be prescribed by the Commissioner.

(d) * * *

Sec. 2. No trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

(a) Consists of or comprises immoral, deceptive, or scandalous matter; or matter which may disparage or falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt, or disrepute.

(b) Consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof.

(c) Consists of or comprises a name, portrait, or signature identifying a particular living individual except by his written consent, or the name, signature, or portrait of a deceased President of the United States during the life of his widow, if any, except by the written consent of the widow.

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers:

* * * * *

(e) Consists of a mark which, (1) when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them, or (2) when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them, except as indications of regional origin may be registrable under section 4 hereof, or (3) is primarily merely a surname.

(f) Except as expressly excluded in paragraphs (a), (b), (c), and (d) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration.

a secondary meaning in the trade, and means only Gold Seal's goods and distinguishes the same from the goods of others—all within the meaning of Section 2 of the Act. The mark is not such a mark as is precluded from registration on the Principal Register by any provision of the Act.

In 1947 (December 16) Gold Seal filed in the Patent Office an application for registration of the trade-mark "Glass Wax" and in 1948 (February 16) filed a "Petition to Make Case Special" informing the Commissioner of Patents that Gold Seal was seeking registration of "Glass Wax" under Section 2(f) of the Act. Thereafter "Glass Wax" was held registrable by the Patent Office and was published in the Official Gazette. Johnson & Son then filed a Notice of Opposition, and Opposition No. 27543 was instituted. Gold Seal filed an answer and counterclaim in the Opposition, and proceedings were taken in the Patent Office including the taking of depositions by Gold Seal and by Johnson & Son. Thereafter the Examiner of Interferences ruled as follows:

". . . it is the examiner's opinion that the opposer was entitled to institute this proceeding, and that the opposition must be sustained for the reason that the application now before the examiner seeks registration of the word 'GLASS WAX' as a technical trademark, [2] without having been presented under Section 2(f) of the Act of 1946, under which section alone, in the examiner's opinion, applicant's mark might qualify for the principal register. Accordingly, the opposition is hereby sustained and it is further adjudged that the applicant is not entitled to the registration of the word 'GLASS WAX' as sought in the present application."

Finally the Commissioner of Patents, hereafter referred to as the Commissioner, in the following terms, affirmed the decision of the Examiner of Interferences:

"Applicant is not precluded by the decision in this case from applying for registration under Section 2(f) of the Act on a new application appropriately worded for this purpose, and the decision herein is without prejudice to consideration of registrability of the mark on such an application. The decision of the examiner of interferences sustaining the opposition is affirmed."

Pursuant to the described proceedings, the Commissioner and the Secretary of Commerce, hereafter referred to as the Secretary, refused to register the trade-mark "Glass Wax" and refused to issue to Gold Seal a Certificate of Registration.

The complaint contains also certain argumentative material which may be summarized as follows:

This decision of the Commissioner and the Secretary unlawfully denies to Gold Seal registration of the trade-mark "Glass Wax". The

decision is erroneous in ruling that that trade-mark is not registrable in view of Section 2(e) of the Act because if it contains wax it is descriptive and if it does not it is deceptively misdescriptive; and is erroneous in ruling that it is not registrable under Section 2(f) of the Act because the application filed by Gold Seal can not be considered an application under Section 2(f); and is erroneous in ruling that the question of distinctiveness was therefore not in issue, and that nothing was presented to the Examiner to show a right to register the trade-mark on the basis of Section 2(f).

Upon the basis of the foregoing allegations and charges of error, the complaint prays for a decree by the District Court that Gold Seal is entitled to registration of "Glass Wax" as a trade-mark and to receive a Certificate of Registration therefor.

To the complaint thus filed by Gold Seal the Commissioner and the Secretary filed an answer in which they assert that Gold Seal is not entitled to the registration of "Glass Wax"; the detail of the answer is not here pertinent. An answer was filed also by Johnson & Son in which that defendant asserts that Gold Seal, because of failure to show compliance with the conditions of Section 2(a), (e), and (f) or with any of the conditions of the Act, is not entitled to the registration of "Glass Wax" as a trademark; the detail of that answer is also not here pertinent. Johnson & Son also filed a counterclaim; its terms are not material to the issue presently before this court. Johnson & Son also filed a cross-claim against the Secretary and the Commissioner. The cross-claim alleges, so far as here pertinent, in substance and effect that:

The words "Glass Wax" sought to be registered by Gold Seal have been used on goods which in fact contain no wax, and the words thus comprise deceptive matter and therefore registration is prohibited by Section 2(a) of the Act. The words "Glass Wax" have not been used by Gold Seal to identify its goods and distinguish them from those manufactured or sold by others, and therefore the words are not a trade-mark within the meaning of Sections 1 and 45 of the Act. The words "Glass Wax" when applied to the goods of Gold Seal are descriptive, or are deceptively misdescriptive, and therefore registration is prohibited by Section 2(e) of the Act. The application by Gold Seal was not filed under the provisions of Section 2(f) and therefore the

2. By a "technical trade-mark" is meant, in trade-mark parlance, a mark registrable because it complies with the conditions of

the Act other than that condition set forth in Section 2(f).

Commissioner and the Secretary can not register "Glass Wax" thereunder on the basis of the present application. Section 2(f) can not be relied upon to overcome the prohibition of Section 2(a), and can not be relied upon to make the words "Glass Wax" a trade-mark within the meaning of Section 1 or within the definition of Section 45 of the Act.

The cross-claim prays for a declaration by the District Court that the words "Glass Wax" as used by Gold Seal do not constitute a lawful trade-mark and that Gold Seal is not entitled to register the same. The cross-claim prays also that the Secretary and the Commissioner be restrained from registering "Glass Wax" as a trade-mark under any of the provisions of the Act, and that they be restrained from granting to Gold Seal a Certificate of Registration.

The Secretary and the Commissioner filed a motion to dismiss the cross-claim. When that motion came on for hearing before a motions judge in the District Court a colloquy occurred between the judge and counsel for the Secretary and the Commissioner and counsel for Johnson & Son, with counsel for Gold Seal present and occasionally participating, but doing so, apparently, without basis in the pleadings since no motion had been filed against Gold Seal's complaint. In the course of the colloquy it was asserted that the complaint sought to compel registration of "Glass Wax" not only upon the theory that the conditions of Section 2(a) and (e) of the Act were satisfied, but also upon the theory that even if the provisions of Section 2(e) were not satisfied, the words are registrable under Section 2(f) as distinctive, i. e. as having acquired a secondary meaning. It was asserted further that in the Patent Office itself no consideration was given under the application as filed by Gold Seal to registrability of "Glass Wax" under Section 2(f) of the Act. In view of this the motions judge raised the question whether or not, in view of Gilbert v. Marzall, 87 U.S.App.D.C. 1, 182 F.2d 389 (D.C.Cir.1950), Cherry-Burrell Corporation v. Coe, 79 U.S.App.D.C. 124, 143 F. 2d 372 (D.C.Cir.1944), and Lucke v. Coe, 63 App.D.C. 61, 69 F.2d 379 (1934), the District Court could properly consider the complaint insofar as it sought relief under Section 2(f).[3] Finally the motions judge, acting *sua sponte,* expressed a willingness to sign an order eliminating from the case any consideration of Section 2(f) under either the complaint of Gold Seal or the cross-claim of Johnson & Son, but leaving the pleadings otherwise standing. Counsel for the Secretary and the Commissioner indicated that such an order would satisfy them. As a result, the judgment which is the subject of the present appeal and the present motion to dismiss was entered, in the following terms:

"ORDERED AND ADJUDGED that the Plaintiff's complaint and the cross-claim of the Defendant, S. C. Johnson & Son, Inc., insofar as both relate to the claim of Plaintiff, Gold Seal Company, to a registration of the alleged trade-mark "GLASS WAX" under the provisions of Section 2(f) of the Trade-Mark Act of July 5, 1946, be and the same hereby are dismissed.

"The Court finds that there is no just reason for delay and this order constitutes a final judgment as to that part of Plaintiff's complaint and that part of the cross claim of the Defendant, S. C. Johnson & Son, Inc., which relate to Plaintiff's claim to a registration under the provisions of Section 2(f) of the Trade-Mark Act of July 5, 1946, within the provisions of Rule 54(b) Federal Rules of Civil Procedure."

---

3. The cases referred to in the text rule that in an action under Rev.Stat. § 4915 (in its present form 66 Stat. 803 (1952), 35 U.S.C.A. § 145 (Supp.1952) ) the court will determine the patentability only of such claims in a patent application as have been determined by the Patent Office. The motions judge was apparently of the view that a claim for relief under the Federal Rules of Civil Procedure parallels a patent claim required by the patent statutes to be stated as a part of an application for a patent, and the motions judge apparently thought also that in view of the cases referred to the District Court was forbidden to consider the Section 2 (f) aspect of the complaint until the Patent Office had ruled upon a Patent Office application by Gold Seal for registration of "Glass Wax" under Section 2(f) of the Act. Upon the correctness of these views of the motions judge we make no decision.

## II

Rule 54(b) of the Federal Rules of Civil Procedure provides:

"Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

As construed and applied by the courts Rule 54(b) is applicable only in instances in which more than one claim for relief is presented in an action, and in which the claim upon which a final judgment is to be entered under the Rule is itself a claim distinct from the other claim or claims. Reeves v. Beardall, 316 U.S. 283, 62 S.Ct. 1085, 86 L.Ed. 1478 (1942); Town of Clarksville, Va. v. United States, 4 Cir., 198 F.2d 238 (1952), certiorari denied 344 U.S. 927, 73 S.Ct. 495 (1953); Western Contracting Corp. v. National Surety Corp., 4 Cir., 163 F.2d 456 (1947); Collins v. Metro-Goldwyn Pictures Corp., 2 Cir., 106 F.2d 83 (1939). In Reeves v. Beardall a complaint embraced three counts, the first containing a claim upon a promissory note executed by the respondent's decedent; the second containing a claim seeking specific performance or damages under an alleged contract between the petitioner and the respondent's decedent whereby the latter, in consideration of the petitioner's return of certain securities and of the petitioner's agreement not to press for payment of the note, agreed not to change her will; the third containing a claim for an accounting against a third party who was alleged to hold certain assets of the decedent to which the petitioner was entitled by reason of the contract on which the second count was based. A judgment dismissing the second count was held appealable under Rule 54(b) as a final judgment upon a claim distinct from the claims in the first and third counts. In Town of Clarksville, Va. v. United States the Court of Appeals for the Fourth Circuit ruled that a claim for compensation for a condemnation taking of a sewer system and a claim for the cost of construction of a sewage treatment plant and for the cost of operation and maintenance of lift stations not needed under that system were separate claims, so that an adverse judgment upon the latter claim was the proper subject of an appeal in view of Rule 54(b). In Western Contracting Corp. v. National Surety Corp. the Court of Appeals for the Fourth Circuit ruled that the claim of a surety of non-liability upon its secondary obligation is not a claim distinct from that of the principal of non-liability on its primary obligation, and that therefore an adjudication of non-liability of the surety prior to a judgment as to the liability of the principal was not appealable as a final judgment on one of a plurality of claims under Rule 54(b). In Collins v. Metro-Goldwyn Pictures Corp. the Court of Appeals for the Second Circuit regarded as distinct, one from the other, within the purview of Rule 54(b), two claims, one of which was for an infringement of a copyrighted book called "Test Pilot" by a motion picture of the same name, and the other of which was for unfair competition in using the title "Test Pilot" as the title of the picture. The court ruled that an order dismissing the infringement claim when the court below had not disposed of the unfair competition claim was appealable.

The claim for relief referred to in Rule 54(b) is of course the claim for relief referred to in Rule 8(a) of the Federal Rules of Civil Procedure. As such it must show that the claimant is "entitled to relief." That is to say, the claim for relief must indicate the existence of a cause of action. By cause of action in this context is meant a claim that facts exist which, under our legal system, are recognized as entitling the claimant to judicial action in vindication of a right or in remedying a wrong. Pat-

ten v. Dennis, 9 Cir., 134 F.2d 137 (1943), cited with approval in Pierce v. Wagner, 9 Cir., 134 F.2d 958 (1943). In Patten v. Dennis the Court of Appeals for the Ninth Circuit affirmed, because it was impossible to spell out from various petitions and motions filed by the appellant Patten as plaintiff in the action any "clear theory of liability," a judgment dismissing the appellant's case. In so doing the court said:

"Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that a pleading which sets forth a claim for relief shall contain '(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief to which he deems himself entitled'. In Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069, it is said: 'A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show'. See also: Hurn v. Oursler, 289 U.S. 238, 246, 53 S.Ct. 586, 77 L.Ed. 1148.

"The requirements of a complaint may be stated, in different words, as being a statement of facts showing (1) the jurisdiction of the court; (2) ownership of a right by plaintiff; (3) violation of that right by defendant; (4) injury resulting to plaintiff by such violation; and (5) justification for equitable relief where that is sought. See: United States v. Humboldt Lovelock Irr. Light & P. Co., 9 Cir., 97 F.2d 38, 42; United States v. McIntire, 9 Cir., 101 F.2d 650, 653. The complaint is completed by a demand for relief." (134 F.2d at 138)

A view that a claim for relief need not state a cause of action as above defined, would be an abandonment of a fundamental premise of our system of law, to wit, that the courts administer justice not according to the personal notions of the judge but according to law. Courts are not authorized to require a party defendant to defend against a "cause" not recognized by law as involving the vindication of a legal right or the remedying of a legal wrong. We take note of the statement in Reeves v. Beardall, supra, that the Rules make it clear that it is "differing occurrences or transactions, which form the basis of separate units of judicial action." We take note also of the concurring opinion of Judge Clark in Atwater v. North American Coal Corporation, 2 Cir., 111 F.2d 125, 126 (1940) from which that language was taken. Also we have in mind the statement by Judge Clark in Dioguardi v. Durning, 2 Cir., 139 F.2d 774, 775 (1944) to the effect that under the Rules "there is no pleading requirement of stating 'facts sufficient to constitute a cause of action' but only that there be a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " But we do not understand these statements to mean that a claim for relief need not state facts which, under our legal system, are recognized as entitling the claimant to judicial action in vindication of a right or in remedying a wrong.[4]

### III

In ruling that the instant action presents more than one claim for relief, and in directing the entry of the judgment sought to be reviewed in this appeal, the motions judge was apparently of the view that the allegations in the complaint relating to Section 2(f) of the Act, i. e. the allegations that the words "Glass Wax" had acquired a distinctive or secondary meaning identifying Gold Seal's goods and distinguishing them from the goods of others, and the allegations of the complaint relating to Section 2(e) of the Act, i. e. the allegations that the words "Glass Wax" are neither merely descriptive nor deceptively mis-

---

4. For further discussion of the meaning of the term "cause of action" in our system of law see: United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933); Georgia R. & Banking Co. v. Wright, 124 Ga. 596, 606, 53 S.E. 251, 256 (1906); Hale v. Stimson, 198 Mo. 134, 149, 95 S.W. 885, 889 (1906); Zenith Bathing Pavilion v. Fair Oaks S.S. Corp., 240 N.Y. 307, 311, 148 N.E. 532, 533 (1925); Columbia Bank v. Equitable Life Assurance Society, 79 App.Div. 601, 609, 80 N.Y.S. 428, 434 (1st Dept. 1903); East Side Mill & Lumber Co. v. Southeast Portland Lumber Co., 155 Or. 367, 372, 64 P.2d 625, 628 (1937). See also: Notes and Comments, 23 Phil.L.J. 523 (1948); Wheaton, The Code "Cause of Action": Its Definition, 22 Corn.L.Q. 1 (1936).

descriptive, constitute statements of two separate and distinct claims for relief either one of which might, under Rule 54 (b), be made the subject of a final judgment. Presumably the motions judge was applying a conventional test to determine whether or not two "causes" are the same, to wit, will the same evidence support both; if it will, the two "causes" are the same, otherwise not. Stone v. United States, 9 Cir., 64 F. 667, 671 (1894), affirmed 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127 (1896), quoting from 1 Freeman on Judgments § 259 (1892); 2 Black on Judgments § 726, page 1089 (2d ed.1902). Obviously the evidence under the Section 2(f) "claim" would be different from the evidence under the Section 2(e) "claim". That would end the dispute as to the existence of a plurality of claims if the conventional "same evidence" test were under all circumstances valid.

But by claim for relief, *i. e.* cause of action, for the purpose of this test of identity, is meant the same in gist or material elements. As said in Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 71 L.Ed. 1069 (1927):

"The *thing*, therefore, which in contemplation of law as its *cause*, becomes a ground for action, is not the group of *facts* alleged in the declaration, bill, or indictment, *but the result of these in a legal wrong, the existence of which, if true, they conclusively evince.*"[5]

To the same effect see United States v. California and Oregon Land Co., 192 U. S. 355, 24 S.Ct. 266, 48 L.Ed. 476 (1904); Werlein v. New Orleans, 177 U. S. 390, 20 S.Ct. 682, 44 L.Ed. 817 (1900); McKnight v. Minneapolis St. Ry. Co., 127 Minn. 207, 149 N.W. 131, L.R.A.1916D, 1164 (1914). In each of those cases it was contended that differing allegations of fact in two successive suits so differentiated the causes of action involved as to make inapplicable in the second a plea of *res judicata* based upon the decision in the first. But in each of those cases it was held that since the facts alleged in the second suit, although different from those asserted in the first, nevertheless lent support to the same cause of action as was sued on in the first, the doctrine of *res judicata* was applicable.[6] Those decisions put it beyond doubt that where in two successive suits between the same parties it is sought in the second to defeat, upon the ground that the causes of action are different, a plea of *res judicata* based upon the first, the test of identity, *i. e.*, whether the same evidence will support each charge, must be applied not in terms of the mere facts, theories or pleadings specifically relied upon in each, but in terms of the ultimate wrong sued on. It is of course true that the question what wrong is sued on must be determined from the allegations in the respective plaintiff's pleadings. But if from the four corners of the pleadings in each of the two suits it appears that the wrong sued on in each is the same, then the assertion in the second suit of facts different from those asserted in the first will not defeat the plea. In short, the "same evidence" test, if applied with complete literalness, is valid as a positive but not as a negative test for determining the identity *vel non* of causes. Obviously, if exactly the same items of evidence would be requisite to the establishment of a plaintiff's case as pleaded in each of two suits between the same parties, the two causes relied upon must be the same—because the allegations would be identical and therefore could describe but one and the same legal wrong. But, as illustrated in

---

**5.** This statement is quoted from Chobanian v. Washburn Wire Co., 33 R.I. 289, 302, 80 A. 394, 400, 29 Ann.Cas.1913D. 730, 735 (1911), the opinion in which was quoting from Columbus v. Anglin, 120 Ga. 785, 48 S.E. 318 (1903), the opinion in which, in turn, was quoting from Sibley, Right to and Cause for Action, 48.

**6.** The cases referred to are stated and pertinent portions of the opinions are quoted in the separate opinion of the present writer in United States v. United States Gypsum Co., D.C., 51 F.Supp. 613, 615–639 (1943). See in particular pages 621 to 626, including footnote 17 at pages 623–626. The discussion in the present opinion of the cases referred to also appears in that separate opinion.

the cases cited, the same legal wrong may be found relied upon in each of two suits despite the fact that the pleadings may differ—in that in one the wrong is described in terms of the assertion of but a part of the facts actually available to establish it, whereas in the other those facts are omitted and the remainder stated. In such event, obviously, the evidence admissible under the pleadings in the two suits will be different; yet the causes of action are the same. Putting this still otherwise: There is a totality of facts out of which every legal wrong grows; but a single wrong cannot be made the basis of a plurality of actions by alleging in one case but a part of that totality and in another or other cases the remainder thereof. A *fortiori*, a single wrong cannot be made the basis of a plurality of actions by alleging in one case but a part of the totality of facts out of which the wrong grows and in another alleging that part plus the remainder. As said in Baltimore S. S. Co. v. Phillips:

"The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong. . . . The facts are merely the means, and not the end. They do not constitute the cause of action, but they show its existence by making the wrong appear. . . .' " (274 U.S. at 321, 47 S.Ct. at 602)

While in the cases cited the question of identity of causes of action arose under pleas of res *judicata* filed in the second of two separate suits, whereas in the instant case the question arises, under the present motion to dismiss, in respect of different allegations in the same complaint in the same suit, and while the subject matter of the actions in the cases cited and in the instant case are different, nevertheless the theory underlying the decisions in the cases cited is fundamental in our system of law. And the reasoning and rulings in those cases are obviously as fully applicable to different allegations in the same complaint in the same suit as they are to different allegations in complaints in successive suits, if the legal wrong sued on is the same.

If we apply the reasoning and rulings reviewed to the question arising under the present motion to dismiss the appeal, the answer is, we think, clear that the Section 2(f) allegations in Gold Seal's complaint to the effect that the words "Glass Wax" have acquired a secondary or distinctive meaning, and the Section 2(e) allegations therein to the effect that the words "Glass Wax" are neither merely descriptive nor deceptively misdescriptive, do not state separate claims for relief. For patently the legal wrong sought to be remedied under each of the two sets of allegations is one and the same, to wit, the allegedly wrongful refusal of registration as a trade-mark of the words "Glass Wax". Putting this in terms of legal "right" and legal "duty" the Trade-mark Act creates a statutory right of registration of a mark, certain conditions set forth in the Act being complied with; it is this right which Gold Seal seeks to vindicate. The Act imposes a correlative duty upon the Commissioner and the Secretary to register a mark if the statutory conditions are complied with. It is this duty a wrongful breach of which Gold Seal seeks to remedy. The allegations of compliance with Section 2(e) of the Act and the allegations of compliance with Section 2(f) are but the statement of two different grounds for vindication of the same statutory right of registration, or of two different grounds for the remedying of the same statutory wrong—refusal of registration. The "claim for relief" under the Section 2(f) allegations is therefore not a claim for relief separate and distinct from the other claim or claims presented in the action and is not, therefore, the proper subject of a final judgment under Rule 54(b).

The fact that the motions judge, in the order sought to be reviewed, characterized the same as a final judgment upon a separate claim can not make the order such a judgment or the claim such a claim, if the claim fails to meet the standard of separateness or distinctness required by the law and the judgment

fails to meet the standards of finality so required. Flegenheimer v. General Mills, 2 Cir., 191 F.2d 237 (1951); Audi Vision, Inc., v. RCA Mfg. Co., 2 Cir., 136 F. 2d 621, 147 A.L.R. 574 (1943). Cf. Federal Trade Commission v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 73 S.Ct. 245 (1952). For a contrary ruling see Bendix Aviation Corp. v. Glass, 3 Cir., 195 F.2d 267 (1952). With due deference to our colleagues in the United States Court of Appeals for the Third Circuit we feel obliged to follow the position taken in the cases decided in the Second Circuit.

The motion to dismiss the appeal is Granted.