## FOLLY AMUSEMENT HOLDING CORPORATION v. RANDFORCE AMUSEMENT CORPORATION et al.

District Court, S. D. New York.

Aug. 5, 1939.

Louis Halle, of New York City, for plaintiff.

Telsey & Young, of New York City, for defendants Randforce Amusement Corp., Samuel Rinzler and Louis Frisch.

J. Robert Rubin, of New York City, for Loew's, Inc.

R. W. Perkins, of New York City, for Warner Bros. Pictures, Inc., and Vitagraph, Inc.

362

Dwight, Harris, Koegel & Caskey, of New York City, for 20th Century-Fox Film Co.

William Mallard, of New York City, for R.K.O. Pictures, Inc.

Austin C. Keough, of New York City, for Paramount Pictures, Inc.

Charles D. Prutzman, of New York City, for Universal Film Exchanges, Inc., and Big U Film Exchange, Inc.

O'Brien, Driscoll & Raftery, of New York City, for United Artists Corp.

Julian B. Rosenthal, of New York City, for Monogram Distributing Corp.

Meyer H. Lavenstein, of New York City, for Republic Pictures Corp.

HULBERT, District Judge.

There are eleven motions addressed to the complaint.

Plaintiff sues to recover treble damages for alleged violation of the Sherman Anti-Trust Law, Title 15 U.S.C.A. §§ 1, 2, 7, and the Clayton Anti-Trust Act, 15 U.S.C.A. §§ 12, 13, 14, 15, 16, 18, 22 and 23.

Summarizing the rather voluminous complaint, without effort to embellish the substance of the allegations, plaintiff is a New York corporation and leased a theatre at 15 Debevoise St., Brooklyn (Eastern District), known as the "Folley" from the Hyde & Behman Corporation for a period of ten years to commence on December 23, 1933, to be operated by plaintiff as an independent exhibitor of motion pictures. Prior thereto this theatre was managed by Shea Chain, Inc., as agents for the lessor and plaintiff contracted with Shea for the duration of said lease to continue to purchase the same type of motion picture product, classified as "third" or "subsequent run" film as had been shown during the management of Shea, for exhibition in conjunction with a vaudeville show.

Defendants Rinzler and Frisch are residents of the State of New York and engaged in the operation of motion picture theatres "either directly or indirectly, and are the principal officers of Randforce Amusement Corp.," which it will be assumed is a corporation although not so averred. These three defendants are designated as "defendant exhibitors". The remaining defendants, designated as "defendant distributors," are alleged to be corporations (place of incorporation not stated) each maintaining a place of business in the State of New York within the jurisdiction of this court, and all of said defendants are engaged in Interstate Commerce and are producers and distributors of motion picture films throughout the United States (except R.K.O. Radio Pictures, Inc).

The defendant exhibitors have been in the business of operating a chain of motion picture theatres, and some of them are in the same "zone" in which the plaintiff's theatre was located, to-wit—the Alba and the Rainbow, one and six blocks respectively from the plaintiff's theatre the "Folley"; also the Commodore and the Republic, since acquired by R.K.O.

The defendant producers (sic) and the producing companies affiliated with the defendant distributors, who are "major producers," manufactured practically the only films having any commercial value which are generally of a much better grade than the films manufactured by the other producers referred to as the "independent producers" which, being of an inferior quality, have not been generally exhibited at motion picture theatres, and the number of suitable films manufactured by the independent producers is wholly inadequate to supply seasonal needs of any motion picture theatre and a regular supply of the films of the major producers, which are classified as "A" "B" and "C" pictures is essential for every theatre operator, particularly in the highly competitive "zone" in which the plaintiff's theatre was located.

Approximately 350 pictures of the major producers and 100 pictures of the independent producers are distributed in the several states of the United States each year.

Under the booking contracts in effect during the season September 1, 1933 to August 31, 1934, approximately 100 pictures from the Metro Corporation (which merged into the defendant Loew's, Inc.) and the Warner Bros. Picture, Inc., were displayed at plaintiff's theatre after playing first run at Loew's theatres and second run at other houses in the "zone".

The Alba Theatre, operated by the defendant Randforce, was not in an advantageous position to show profitably as second or subsequent pictures, product which had been exhibited at Loew's as first run,

so that Alba was not interested in booking Metro (Loew's) and Warner product for Alba so long as it was being shown first run at Loew's.

During the early part of 1934, R.K.O. and Loew (as exhibitors) "made a deal" which resulted in shifting the Warner product exhibited as first run in Loew's Theatres, to R.K.O. (1 mile from Alba) as first run. Thus, because of this distance it became profitable to show the Warner product as second run in the Alba. Randforce continued to operate approximately 40 theatres and defendant producers and distributors, in order to obtain bookings for their product from Randforce, were terrorized to do its bidding.

On or about, or prior to July 1934, the defendants entered into a combination and conspiracy to restrain and monopolize Interstate Trade and Commerce in the distribution and exhibition of motion pictures, particularly the right to contract for and to exhibit the same and deprive plaintiff of an opportunity to do so; it was a part of this conspiracy to minimize, suppress and destroy competition and prevent plaintiff from competing with Alba and other theatres owned by Randforce with a view toward the total destruction of plaintiff's business.

In furtherance thereof, plaintiff proceeds to set forth at length numerous overt acts, i.e., "In furtherance of the aforesaid unlawful combination and conspiracy, the defendant exhibitor, Randforce Amusement Corporation, illegally contracted with the defendant distributors herein for:

"(a) exclusive right to exhibit the films distributed by the latter in the theatres of the Randforce Amusement Corporation;

"(b) special privileges and preferences to the said Randforce theatres, including concessions in prices, long terms of credit, priority, and exclusiveness in playing dates:

"(c) the right of selection, cancellation, and rejection of films by the said Randforce Circuit;

"(d) the refusal on the part of the defendant distributors to enter into contracts with the plaintiff for licenses to exhibit their films in its theatre, and that no such licenses should be issued to the plaintiff, or any films delivered to it, except when the Randforce Amusement Corp., who would have the right to exhibit the said films prior to the right of the plaintiff to exhibit the same, was unwilling to contract for the said films and then, only upon the condition that said films could not be exhibited by the plaintiff until after lapses of long and unreasonable periods of 'protection' and finally;

"(e) furtherance of the intent and purpose of said combination and conspiracy by hindering and harassing the plaintiff in other ways and by other methods expedient to the defendant, Randforce Amusement Corp., and the other defendants herein to interfere with and disturb and injure the business of the plaintiff in order to facilitate the elimination of the plaintiff as a competitor of the Randforce Amusement Corporation's Alba Theatre, and such other theatres of the Randforce Amusement Corp., as would operate in competition with the plaintiff."

As a consequence and in furtherance of the conspiracy, Loew's, Warner and Vitagraph refused to renew their contracts with plaintiff for the season of 1934–1935 because Randforce demanded a half split of pictures produced for exhibition at its Alba theatre.

To replace the shortage which resulted when Loew's, Warner and Vitagraph diverted half of their produce to Alba theatre, plaintiff was compelled to seek out and sign contracts with the defendants Columbia Pictures Corp. and Universal Film Exchanges, Inc.

The diversion of one half of the product of Metro (Loew's) Warner and Vitagraph to Alba, made it necessary for the plaintiff to increase the cost of vaudeville stage production which wiped out plaintiff's profits for that season.

Sometime in April or May of 1935, the defendants Frisch and Rinzler demanded of the plaintiff a one half interest in plaintiff's theatre without being required to give any consideration therefor and accompanied said demand by a threat that non-compliance therewith would result in the destruction of the plaintiff's business. Plaintiff refused the demand.

Thereafter, in 1935, when the buying season for the picture product for the season of 1935–1936 arrived, Metro (Loew's) Warner and Vitagraph refused to renew their contracts with plaintiff, explaining that Randforce had secured the same.

Plaintiff thereupon ascertained that Warner had entered into an agreement with Randforce providing that Warner's entire product for that season would be exhibited, first run, at R.K.O. Bushwick theatre, Brooklyn, and second run in the Alba theatre, thereby depriving plaintiff of the opportunity to exhibit any of the Warner product.

Thereafter when plaintiff attempted to enter into an agreement with Loew's for licenses to exhibit a portion of the films produced by Loew's for that season, Loew's offered to obtain from Randforce a split of the films which it had already licensed to be exhibited at the Alba at a price per film which was exorbitant and far in excess of the amount Loew's had agreed to receive from Randforce, and plaintiff was unable to enter into such contracts.

Plaintiff having failed to secure licenses to exhibit films at its theatre from the major producing and distributing corporations was compelled to seek licenses from the independent production companies and in negotiating with them learned that Randforce in furtherance of the conspiracy had obtained licenses for said independent production units to exhibit all of the preferred pictures produced by them, leaving available to the plaintiff only films of an inferior grade, unsuitable for its requirements.

Plaintiff was unable to continue to operate its theatre and in order to avoid closing the theatre, was compelled to negotiate a deal with the Springer Cocalis Corp., which was in a position, since it operated an extensive chain of theatres in New York State, to obtain licenses to exhibit films required and suitable for the business of the plaintiff on reasonable terms and conditions and at prices on a par with those paid by others for similar licenses; which films plaintiff had been unable to secure on such terms, conditions, and prices because of the alleged conspiracy.

Negotiations between plaintiff and Springer Cocalis Corp. resulted in the incorporation of Lyric Frolics, Inc., and its successful operation of the Folley theatre, as sub-lessee, for the season of 1935–1936, through the effort of Mr. Springer in securing all of the Paramount Picture Corp. product, approximating 50 pictures, half of Columbia pictures product, approximating 50 pictures, and 6 pictures from Loew's, at a fair and reasonable rental and upon reasonable terms and conditions.

During the operation of the Folley theatre under the management of the Lyric Frolics, Inc., profits increased considerably until the early part of 1936 when the buying season for the product to be exhibited during the season of 1936–37 arrived.

Mr. Springer in May of 1936 attempted to negotiate with defendants Frisch and Rinzler to acquire from Randforce, with their cooperation, a fair and equal split of the major and independent picture products for the coming season.

Frisch and Rinzler on behalf of Randforce, flatly refused to negotiate on the plan suggested, and to cooperate with Lyric Frolics, Inc., but informed the representatives of Lyric Frolics, Inc., in a threatening manner, that they would erect an 1800 séat theatre (subsequently constructed and known as the Rainbow) approximately six blocks from and in direct competition with the Folley theatre, unless they could purchase a one half interest in the Lyric Frolics, Inc., for the sum of $30,000.

Lyric Frolics, Inc., was only able to obtain for its theatre for the season 1936–37, all of Columbia picture product, approximately 40 pictures; all of the Paramount product, approximately 50 pictures, half of Universal pictures, approximately 20 pictures, and part of the Independent, Republic pictures, approximating 18, but was unable to purchase any pictures from Loew's, Vitagraph and Warner, and in consequence sustained heavy losses.

Thereafter, Randforce and the defendants Frisch and Rinzler demanded that a half interest in the Lyric Frolics, Inc., be transferred to them without any monetary consideration and stated that if this demand were complied with they would forego building the 1800 seat theatre for a period of three years and would see that the Folley management received the product of the major defendant distributors, including Metro or Loew's and Warner for exhibit at the Folley, otherwise such product would not be available to the Folley theatre, and the construction of the theatre (Rainbow) would be immediately proceeded with.

By reason of these acts, in furtherance of the alleged conspiracy, the Folley theatre continued to operate at a loss.

In May, 1937, the defendant Rinzler, on behalf of Randforce, stated to the representative of the plaintiff and the Lyric Frolics, Inc., that Randforce would need four pictures a week to be exhibited at its Rainbow

theatre, and four pictures a week in its Alba theatre, or a total of eight pictures a week, or 416 pictures a year, and further stated that he could not possibly see his way clear to relinquish any part of the major product of the defendant distributors for exhibition at the Folley theatre, except a few class "C" or inferior pictures.

The Rainbow theatre was erected and leased by the "defendant exhibitors" in furtherance of the alleged conspiracy to eliminate competition by forcing the Folley theatre to close down.

The Rainbow theatre was opened on or about October 23, 1937 and within a week or ten days thereafter, it developed that Randforce was using only four pictures a week for both the Rainbow and the Alba theatres. They would play the A and B class pictures either two days in the Rainbow and five days in the Alba, or vice versa, hence plaintiff alleges the defendant Randforce actually needed only four pictures of the major product despite the fact that they had contracted for all of the major films.

A further investigation disclosed that Randforce had overbought not only the major product but had also made selective contracts with the independent companies in the form of a "money committment"— that is, to pay an offered sum for all the pictures produced with the option to play all or any part of them depending upon their quality and nature, thus empowering Randforce to prevent the Lyric Frolics management from acquiring any independent picture which Randforce did not wish them to have.

Due to lack of product the Folley theatre was compelled to close during June, July, August and the early part of September.

On or about September 23, 1937 the Lyric Frolics, Inc., was more or less successful in contracting with the Paramount Pictures, Inc., for the "sluff off pictures" of their output approximating 20 pictures which the defendant Randforce did not desire, and coupled with some sluff off pictures secured from other independent and major companies the Lyric Frolics, Inc., were able to secure sufficient films to continue operating until the spring of 1938, but at a considerable loss.

On May 15, 1938, Lyric Frolic management was again compelled to close the Folley theatre and, being indebted to the plaintiff in the sum of $9,000, determined not to reopen.

The plaintiff thereupon instituted dispossess proceedings against the Lyric Frolics, Inc., and in July 1938 reacquired the Folley theatre but kept it closed until September 18, 1938. Meanwhile the Lyric Frolics, Inc., was adjudicated a bankrupt with liabilities of $15,000 and no assets. The plaintiff attempted to purchase produce for its theatre upon reopening September 18, 1938, but was unsuccessful since the only pictures they could purchase were the sluff off or spot booking pictures that were rejected by Randforce.

Due to lack of product the Folley theatre was again closed on November 2, 1938 and plaintiff dispossessed. Thereupon Randforce leased the Folley theatre but has kept it closed in order to eliminate competition with Alba and Rainbow.

The defendant United Artists Corporation moves to dismiss the complaint or, to strike out paragraphs 40 to 55, inclusive, which relate to the occupancy and operation of the Folley theatre by Lyric Frolics, Inc., and for a more definite statement and bill of particulars. There is no specific reference in the complaint to the United Artists Corporation as a participant in the conspiracy and no specific acts alleged in furtherance thereof in which United Artists Corporation participated beyond the inclusion of United as one of the defendant distributors. The motion will be granted with leave to plaintiff to amend within 20 days.

One of two motions made by Loew's, Inc., is also to strike out paragraphs 40 to 55 inclusive. Of course, plaintiff cannot recover for any damage sustained by Lyric Frolics, Inc., which operated the Folley Theatre as the plaintiff's sub-lessee; but if there was a conspiracy, it is certainly pertinent and material to allege the facts stated as a basis of proof that plaintiff could not secure films because of such conspiracy except by securing the assistance and co-operation of Mr. Springer and the prestige of the Springer Cocalis Corp. That motion is, therefore, denied.

Randforce Amusement Corp., and its officers, Rinzler and Frisch, sued individually; Loew's, Inc.; Warner Bros. Picture, Inc.; Vitagraph; Twentieth Century-Fox Film Corp.; R.K.O. Radio Pictures, Inc.; Paramount Pictures, Inc., Monogram Distributing Corp.; Universal Film Exchange and Big U Film Exchange, Inc., and Republic Pictures Corp., each move for a more definite statement and bill of particulars.

The court has prepared and attached hereto a chart[1] indicating the particulars sought by each of these defendants with respect to each paragraph of the complaint as to each bill of particulars as demanded. For example: Randforce, Rinzler and Frisch are the only defendants who seek particulars with respect to paragraphs 6, 7, 8, 18, 25, 31, 35, 50 and 56; Monogram Distributing Corp., is the only defendant which demands particulars with respect to paragraphs 10, 13, 14 and 16; two or more of the defendants demand particulars with respect to paragraphs 21, 22, 23, 24, 27, 28, 29, 30, 32, 33, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 51, 52, 54, 57 and 61.

■ Such particulars as are believed to be essential in order to enable the defendants to answer have been allowed as indicated by endorsement upon each set of mo-

| COMPLAINT Par. | Randforce Rinzler & Frisch | Loew's | Warner Bros. Vitagraph | 20th Century | R.K.O. Pictures, Inc. | Paramount Pictures | Universal Film Exch. Big U Film Exchange | Republic Pictures | Monogram Dist. Corp. |
|---|---|---|---|---|---|---|---|---|---|
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| 8 | | | | | | | | | |
| 10 | | | | | | | | | 10 |
| 13 | | | | | | | | | 13 |
| 14 | | | | | | | | | 14 |
| 16 | | | | | | | | | 16 |
| 18 | | | | | | | | | |
| 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | 21 | |
| 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | 22 | |
| 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | 23 | |
| 24 | 24 | 24 | | 24 | 24 | 24 | 24 | 24 | |
| 25 | | | | | | | | | |
| 27 | 27 | 27 | 27 | 27 | 27 | 27 | 27 | 26 | 27 |
| 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 | 28 |
| 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 | 29 |
| 30 | 30 | 30 | | | 30 | | 30 | 30 | |
| 31 | | | | | | | | | |
| 32 | 32 | 32 | 32 | 32 | 32 | | 32 | 32 | |
| 33 | 33 | 33 | 33 | | 33 | | 33 | 33 | |
| 34 | 34 | 34 | 34 | | 34 | 34 | 34 | 34 | |
| 35 | | | | | | | | | |
| 36 | 36 | | | | 36 | 36 | 36 | 36 | |
| 37 | | 37 | | | 37 | 37 | 37 | 37 | |
| 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 |
| 39 | | | | | | | | | 39 |
| 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | |
| 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | 41 | |
| 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | 42 | |
| 43 | 43 | 43 | 43 | 43 | 43 | 43 | 43 | 43 | |
| 44 | 44 | 44 | 44 | | 44 | 44 | 44 | 44 | |
| 45 | 45 | 45 | 45 | | 45 | 45 | 45 | 45 | |
| 46 | 46 | 46 | 46 | | 46 | 46 | 46 | 46 | |
| 47 | 47 | 47 | 47 | | 47 | 47 | 47 | 47 | |
| 48 | 48 | 48 | 48 | 48 | 48 | 48 | 48 | 48 | |
| 49 | 49 | 49 | 49 | | | 49 | 49 | 49 | | 49 |
| 50 | | | | | | | | | |
| 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | 51 | |
| 52 | | 52 | 52 | 52 | 52 | 52 | 52 | 52 | 52 |
| 54 | 54 | 54 | 54 | 54 | 54 | 54 | 54 | 54 | 54 |
| 55 | | | | | | | | | |
| 56 | | | | | | | | | |
| 57 | 57 | 57 | 57 | 57 | 57 | 57 | 57 | 57 | 57 |
| 59 | | | | | | | | | |
| 60 | | | | | | | | | |
| 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 | 61 |

tion papers, and in all other respects the several motions are denied because the defendants, after issue joined, may seek the desired information pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

It may aid the trial court if the disposition of these motions is provided for in one order, but if the parties desire to enter separate orders they may do so. The bill of particulars to be served within 30 days after the entry and service of a copy of the order. In the event that the plaintiff is unable to furnish any information required, he may state his lack of knowledge and inability to do so.