232 F.2d 190
 Selma STEINER, Appellant,
v.
20TH CENTURY-FOX FILM CORPORATION, Fox West Coast Theatres
Corporation, Avenue Fifty-Eight and Pasadena
Corporation and National Theatres
Corporation, Appellees.
 No. 13989.
 United States Court of Appeals Ninth Circuit.
 March 15, 1956.
 
 1
 Schwartz & Alschuler, Bernard Reich, Beverly Hills, Cal., for appellant.
 
 
 2
 Newlin, Holley, Tackabury & Johnston, Hudson B. Cox, Frank R. Johnston, Los Angeles, Cal., for appellees.
 
 
 3
 Before STEPHENS and CHAMBERS, Circuit Judges, and McLAUGHLIN, District judge.
 
 
 4
 McLAUGHLIN, District Judge.
 
 
 5
 Appellant is the owner of the Larchmont Theatre, which shows motion pictures in Los Angeles, California. Appellant alleges the following facts about the appellees. Appellee 20th Century-Fox Film Corporation, hereinafter called Fox, is a New York corporation engaged in the business of producing, distributing and exhibiting motion pictures. Fox maintains an office and transacts business in Los Angeles. Appellee National Theatre Corporation, hereinafter referred to as National, is a Delaware corporation. It is a subsidiary of Fox. National is engaged in the business of exhibiting motion pictures throughout the United States, either directly or through associated companies. Appellee Fox West Coast Theatres Corporation is also a Delaware corporation. It is a subsidiary of National. It operates motion picture theatres, directly or through subsidiary or affiliated corporations, in Los Angeles. Avenue Fifty-Eight and Pasadena Corporation, hereinafter referred to as Pasadena, is a California corporation also engaged in the business of exhibiting motion pictures in California. Mark M. Hansen and Ida R. Hansen are husband and wife. They were defendants in this case; however, the appellant has dismissed as to them. They were appellant's lessees of the Larchmont Theatre.
 
 
 6
 The Larchmont Theatre was opened for business in 1922. It was leased to the Hansens for ten years. In 1932 the Hansens executed a new lease for a term of ten years at a rental of $850 per month. This was reduced by agreement to $150 per week commencing January 1, 1933, In February 1935 the lease was modified to provide a rental of $650 per month for the ensuing year. In August 1935 Pasadena subleased the theatre from the Hansens. In February 1936 the modified rental was continued for an additional year. In February 1937 the rent was increased to $700 per month for the remainder of the lease. The term of the lease was also extended for a further period of 10 years, to December 31, 1952. The Hansens and Pasadena each were given a five-year option to renew the lease at the expiration of the term in 1952. On November 17, 1952, Pasadena closed the theatre and reassigned its interest to the prime lessees, the Hansens. Possession of the theatre was surrendered to the appellant upon the termination of the lease on December 31, 1952.
 
 
 7
 This action, filed March 14, 1951, is based upon §§ 1 and 2 of the Sherman Act, 26 Stat. 209(1890) as amended, 50 Stat. 693 (1937), 15 U.S.C.A. §§ 1 and 2[1] and § 4 of the Clayton Act, 38 Stat. 731 (1914), 15 U.S.C.A. § 15.[2]
 
 
 8
 The amended complaint alleges two conspiracies: one, that the appellees and the Hansens combined and conspired to monopolize the exhibition of motion pictures, and two, that the defendants and certain unnamed distributors of motion pictures combined and conspired to acquire a monopoly of first-run motion pictures. This latter monopoly is stated to have been accomplished by various means including the leasing of theatres below a fair rental. Appellant claims that these low rentals were secured by threats that if a theatre was not leased at a low rental, said theatre would not be supplied with first-run pictures, or a competing theatre would be built which would receive first-run pictures. Appellant does not allege these threats to be overt acts done in furtherance of the conspiracy.
 
 
 9
 The two alleged conspiracies are closely interrelated. In reality they can be considered as one: that the appellees conspired to monopolize the exhibition of motion pictures by combining and conspiring to acquire a monopoly of first-run pictures. The complaint alleges that pursuant to these conspiracies the appellees forced appellant to receive less than the reasonable rental value of the Larchmont Theatre, alleged to be $1250 per month; to accept less favorable lease terms and conditions than could have been obtained in a competitive market; to grant options to renew the lease without adequate considerations; and finally the appellees closed the theatre in favor of other theatres operated by them. Damages of $1,356,300 are asserted, together with a prayer for redress.
 
 
 10
 An overt act must accompany or follow the agreement, and must be done in furtherance of the object of it. Blumenthal v. United States, 9 Cir., 1946, 158 F.2d 883, affirmed 1947, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; Marino v. United States, 9 Cir., 1937, 91 F.2d 691. We have serious doubt whether the reduction of rent can be considered a logical means to achieve the objectives of the conspiracies alleged herein. For the purposes of the complaint, we will assume it is. However, if this case goes to trial, it must be affirmatively proven.
 
 
 11
 The trial court, on motion by appellees, dismissed the complaint upon the ground that the applicable statute of limitations barred the action. The Hansens had not joined the motion to dismiss and remained as defendants before the trial court. The appellant appealed, pursuant to Rule 54(b), Federal Rules of Civil Procedure, 28 U.S.C.; 28 U.S.C. § 2072. In Steiner v. 20th Century-Fox Film Corporation, 9 Cir., 1955, 220 F.2d 105, the appeal was dismissed without a consideration of the merits. Rule 54(b) was held to be inapplicable in the absence of multiple claims.[3] After remand appellant dismissed her complaint against the Hansens, and reappealed.
 
 
 12
 The first issue is whether the appellant is a proper party to bring an antitrust action alleging a conspiracy to monopolize the exhibition of motion pictures. She is.
 
 
 13
 The appellees assert that as a matter of law the appellant's interest as a landlord is too remote to permit recovery. The cases cited by the appellees are not factually similar to the case at bar. In Harrison v. Paramount Pictures, D.C.E.D.Pa., 115 F.Supp. 312, affirmed 3 Cir., 1954, 211 F.2d 405, there were no direct dealings between the plaintiff and defendant. Here the appellant asserts the appellees conspired with the prime lessee to force the appellant to receive less than a reasonable rent. Appellant is not seeking damages caused to the lessee as was attempted in Folly Amusement Holding Corp. v. Randforce Amusement Corp., D.C.S.D.N.Y.1939, 32 F.Supp. 361; Westmoreland Asbestos Co. v. Johns-Manville Corp., D.C.S.D.N.Y.1939, 30 F.Supp. 389, affirmed, 2 Cir., 1940, 113 F.2d 114, held the wrongful acts directly affected the lessee, not the owner. Here the complaint affirmatively alleges direct injury to the appellant, not the lessee. It is said the appellees' wrongful acts operated directly upon the appellant. This is sufficient for the appellant to become a proper party to complain of the conspiracy alleged. Westmoreland Asbestos Co. v. Johns-Manville Corp., supra.
 
 
 14
 The next issue is whether the appellant has stated a recoverable claim under the alleged conspiracy.
 
 
 15
 Recovery in a private civil antitrust action is based upon actual damage. Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 1950, 185 F.2d 196, 208, certiorari denied 1951, 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680; Foster & Kleiser v. Special Site Sign Co., 9 Cir., 1936, 85 F.2d 742, 750, certiorari denied 1937, 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452. As stated in Harrison v. Paramount Pictures, supra, 115 F.Supp. at page 316.
 
 
 16
 "Injury * * * implies violation of a legal right.' * * * this plaintiff 'owns' the building, but her 'property' in it consists entirely of the right to the reversion after the expiration of the lease, plus the rights which she has retained by the leases in respect of it. There is no such thing as a conspiracy against a building, and the plaintiff's injury, if any, can only arise from a violation or impairment of such rights in the property as she has.'
 
 
 17
 Appellees contend that the appellant does not state a recoverable claim because the alleged coercion and threats could have operated only upon the Hansens as appellant's lessees rather than upon the appellant. Appellant is a landlord engaged in the business of leasing a theatre. Her prime lessees were always the Hansens. If the appellees had refused to allow first-run pictures to be exhibited at the Larchmont Theatre, or had built competing theatres to receive first-run movies, the appellant could still have collected the full rental from the Hansens who were never relieved of this responsibility. However, the complaint asserts the appellees in concert with the Hansens forced the appellant to do acts detrimental to her reversionary interest, such as granting to the Hansens in 1938 more favorable lease terms than could have been obtained in a free competitive market, and giving options to renew without adequate consideration. This is sufficient to state an antitrust claim by a landlord.
 
 
 18
 The appellees have submitted affidavits to the effect that the lease terms obtained by the Hansens in 1938 did not involve the appellees in any way. However, affidavits, filed in support of the alternative motion for summary judgment, contradicting the verified complaint give rise to jury questions.
 
 
 19
 Appellees next assert that because the unreasonable rent was in fact in excess of that freely negotiated with the Hansens more than three years before the impact of the alleged Fox monopoly upon the appellant, a recoverable claim is not stated. This also presents a question of fact, and so is a jury problem.
 
 
 20
 The pivotal issue is whether appellant's claim is barred by the statute of limitations.
 
 
 21
 As the antitrust laws do not contain a statute of limitations, the state statute applies. Nothing here suggests the applicability of § 338(4) of the California Code of Civil Procedure. See Foster & Kleiser v. Special Site Sign Co., supra, 85 F.2d at pages 751-752. Indeed, the parties agree that the facts call for the application of the regular three-year statute of limitations found in § 338(1) of the state Code.[4]
 
 
 22
 The question: When does the statute of limitations begin to run? points to the first problem which must be here resolved. Appellant contends that where damages are in their nature continuing the statute runs from the date of the last injury. Under this view the statute of limitations would not run until all injury to a claimant had ceased. We must disagree. In a civil conspiracy, the statute of limitations runs from the commission of the last overt act alleged to have caused damage. Suckow Borax Mines Consol. v. Borax Consolidated, supra; Park-In Theatres v. Paramount-Richards Theatres, D.C.D.Del.1950, 90 F.Supp. 727, affirmed 3 Cir., 1950, 185 F.2d 407, certiorari denied 1951, 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; Henis v. Compania Agricola De Quatemala, D.C.Del.1953, 116 F.Supp. 223; Foster & Kleiser v. Special Site Sign Co., supra; Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 170 F.2d 569; Bluefields S.S. Co. v. United Fruit Co., 3 Cir., 1917, 243 F. 1, dismissed per stipulation 1919, 248 U.S. 595, 39 . s.Ct. 136, 63 L.Ed. 438; Northern Kentucky Tel. Co. v. Southern Bell T. & T. Co., 6 Cir., 1934, 73 F.2d 333, 97 A.L.R. 133, certiorari denied 1935, 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed. 1251; Momand v. Universal Film Exchanges, 1 Cir., 1948, 172 F.2d 37, certiorari denied 1949, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118; Levy v. Paramount Pictures, D.C.N.D.Cal.1952, 104 F.Supp. 787; Pastor v. American T. & T. Co., D.C.S.D.N.Y.1940, 76 F.Supp. 781; 34 Am.Jur. 129, Limitation of Actions, § 162; 97 A.L.R. 152. Consol. v. Borax Consolidated, supra, 185 F.2d at page 208:
 
 
 23
 '* * * private civil antitrust actions are founded, not upon the mere existence of a conspiracy, but upon injuries which result from the commission of forbidden 'overt acts' by the conspirators, * * *.'
 
 
 24
 to mean that the statute of limitations runs not from the overt act, but from the damages sustained. This quotation from Suckow Borax Mines Consol. v. Borax Consolidated, supra, is similar to statements in Foster & Kleiser Co. v. Special Site Sign Co., supra, 85 F.2d at page 751, and Burnham Chemical Co. v. Borax Consolidated, supra, 170 F.2d at page 577. These statements are in turn based upon language in Bluefields S.S. Co. v. United Fruit Co., supra, 243 F. at page 20, to the effect that the statute of limitations begins to run when the cause of action arises, and the cause of action arises when damage is sustained. We do not construe these cases to substantiate appellant's contention. These decisions merely hold that in order to start the running of the statute of limitations there must be damage occasioned by an overt act. In a continuing conspiracy causing continuing damage without further overt acts, the statute of limitations runs, as we have noted, from the time the blow which caused the damage was struck. Any further internal injury affects the problem of how much should be claimed in damages, not the problem of when the statute of limitations commences to run. Otherwise, in a continuing conspiracy, the cause of action of an injured party would never fully develop, nor would there by any limitation upon the right of action, and the beneficent purpose of the statute to delimit the right to sue would be defeated. Park-In Theatres v. Paramount-Richards Theatres, supra; Northern Kentucky Tel. Co. v. Southern Bell T. & T. Co., supra; Momand v. Universal Film Exchanges, 1 Cir., 1948, 172 F.2d 37, certiorari denied 1949, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118.
 
 
 25
 The overt acts alleged in this case concern the lease terms obtained by appellees in 1935, 1936, and 1937. The options to renew received in 1938 and the closing of the Larchmont Theatre in 1952 are also claimed to be overt acts. Only the closing of the theatre is sufficient to bring the complaint outside the bar of the three-year California statute of limitations.
 
 
 26
 Appellees state that this cannot be considered an overt act because they were under no obligation to continue to occupy or use the leased premises during the entire term. However, the case at bar is a tort action, based upon the antitrust laws. As such, there is no need for any contract obligation, only that a violation of the antitrust laws be alleged. Vines v. General Outdoor Advertising Co., 2 Cir., 1948, 171 F.2d 487. The appellant has claimed such a violation and pointed to the closing of the theatre 44 days before the expiration of the lease as an overt act in furtherance of the conspiracy. Appellees have vigorously asserted, and submitted affidavits to the effect, that the theatre was closed because it was losing money over a two-year period (Tr. p. 55), and therefore its closing cannot be considered as an overt act for any conspiracy. This may be true, but the verified complaint contradicts this, alleging the theatre was closed to favor other Fox theatres, giving rise to a question of fact.
 
 
 27
 Another question tendered is whether the statute of limitations was tolled by § 5 of the Clayton Act, 38 Stat. 731 (1914), 15 U.S.C.A. § 16.[5] Appellant alleges that the matters complained of in United States v. Paramount, 1948, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260, are the same matters complained of in the case at bar. The second paragraph of 15 U.S.C.A. § 16 provides that in order for the statute of limitations to be tolled, the matters complained of in a private antitrust action must be 'based in whole or in part on any matter complained of' by the United States in an equity or criminal proceeding to prevent, restrain, or punish violations of any of the antitrust laws.
 
 
 28
 Christensen v. Paramount Pictures, D.C.D.Utah 1950, 1951, 95 F.Supp. 446, 455, interpreted the words 'any matter complained of' to mean the acts of the defendants complained of by the United States in a suit or proceeding. This interpretation is supported by the legislative history of this section. H.R.Rep. 15657, 63d Cong., 2d Sess., House Reports, Vol. 2, p. 14 (1913-1914), states:
 
 
 29
 'This section also provides that the statutes of limitation shall be suspended in favor of private litigants who have sustained damage to their property or business by the wrongful acts of the defendant during the pendency of the suit or proceeding instituted by or on behalf of the United States.'
 
 
 30
 In writing this provision Congress made reference to the matters complained of in the public conspiracy action, not the conspiracy itself.
 
 
 31
 Momand v. Universal Film Exchange, D.C.D.Mass.1942, 43 F.Supp. 996, at pages 1011, 1013, is a case in point. Judge Wyzanski ruled, in essence, that in order for the statute of limitations to be tolled for private litigants in antitrust conspiracy actions, the matters complained of in the private proceeding must be the same acts to achieve the same conspiracy complained of in the action brought by the United States. We agree with this conclusion. General allegations of conduct in violation of the antitrust laws unrelated to the same conduct alleged in a public suit are insufficient to toll the running of a statute of limitations. A greater similarity is needed than that the same conspiracies are alleged. The same means must be used to achieve the same objectives of the same conspiracies by the same defendants. A further basis for this holding is the fact that private civil antitrust actions are not founded upon the conspiracy, but rather the overt acts done in furtherance of it causing injury. Suckow Borax Mines Consol. v. Borax Consolidated, supra, 185 F.2d at page 208; United States v. Pan American Petroleum Co., 9 Cir., 1932, 55 F.2d 753, 778; 15 C.J.S., Conspiracy, § 21, p. 1031.
 
 
 32
 The tolling provision cannot be extended to matters which might have been but were not complained of by the United States. It is restricted to matters actually complained of. The general rules of collateral estoppel apply. The reasoning of Emich Motors Corp. v. General Motors, 1951, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534, and Partmar Corp. v. Paramount Pictures Theatres Corp., 1954, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532, is pertinent, although these cases are concerned with the first paragraph of 15 U.S.C.A. § 16.
 
 
 33
 The trial court, after hearing the parties (Tr. pp. 63, 64, 65), granted the appellees' motion to dismiss, for the matters complained of here are not identical with those alleged in United States v. Paramount, supra. Appellant did state similar threats of building competing theatres and withholding first-run motion pictures. However, in United States v. Paramount, supra, these threats were allegedly used for different purposes and objectives than in the present case. Appellant's contention that specific identification of the 'matters complained of' need not at the initial stage of the action be alleged but left to proof during trial, is without merit. Whether or not the bar of the statute of limitations applies is not a jury question. Where on the face of the complaint the application of the statute of limitations is apparent, the complaint may properly be dismissed by an appropriate motion in advance of trial. Suckow Borax Mines Consol. v. Borax Consolidated, supra, 185 F.2d at page 204; Christensen v. Paramount Pictures, supra; Electric Theatre Co. v. Twentieth Century-Fox F. Corp., D.C.W.D.Mo.1953, 113 F.Supp. 937, 944.
 
 
 34
 After the trial court had originally dismissed appellant's complaint, appellant sought leave to amend the complaint to allege that on September 27, 1952, National commenced to do business in California. The purpose of the amendment was to take advantage of § 351 of the California Code of Civil Procedure,[6] which provides for the tolling of the statute of limitations against an absentee defendant. National did not register with the Secretary of the State of California to do intrastate business in California pursuant to § 6400, California Corporations Code.[7] Appellant contends that because of this failure, National cannot take advantage of the statute of limitations as a defense.
 
 
 35
 Section 6501, California Corporations Code,[8] provides that a foreign corporation which has not registered in California may be served with process by service on the Secretary of State. Appellant's theory is that 'The law affording a plaintiff the right to serve such a defendant notwithstanding it has not filed a certificate was enunciated for the benefit of the plaintiff; it cannot be invoked by the defendant.' This is not the law insofar as § 6501 is concerned. Appellant may be confusing the philosophy of a state statute of limitations with a possible interpretation of 38 Stat. 736 (1914), 15 U.S.C.A. § 22.[9] As stated in Taylor v. Navigazione Libera Triestina, 9 Cir., 1938, 95 F.2d 907, 910:
 
 
 36
 "The mere failure of a foreign corporation to comply with the statutory requirement imposed as a condition of doing business does not preclude it when sued from pleading the statute of limitations when such statute would otherwise be a defense."
 
 
 37
 Also see Loope v. Greyhound Lines, 1952, 114 Cal.App.2d 611, 250 P.2d 651; 23 Am.Jur. p. 313, Foreign Corporations, § 336; 122 A.L.R. 1194; Clawson v. Boston Acme Mines Development Co., 72 Utah 137, 269 P. 147, 59 A.L.R. 1336. A foreign corporation may be illegally conducting business within a state and incur certain penalties because of it, but forfeiture of the right to plead the statute of limitations is not one of them. Taylor v. Navigazione Libera Triestina, supra; 122 A.L.R. 1194.
 
 
 38
 A tolling statute as to absentee defendants is not applicable where such defendants are otherwise amenable to process. Scorza v. Deatherage, 8 Cir., 1954, 208 F.2d 660; Tublitz v. Hirschfeld, 2 Cir., 1941, 118 F.2d 29. Denver-Chicago Trucking Co. v. Lindeman, D.C.N.D.Iowa 1947, 73 F.Supp. 925, cited by appellant, in no way contradicts these cases. It also refused to toll the statute of limitations because of the availability of service upon the Secretary of State.
 
 
 39
 Appellant contends that Taylor v. Navigazione Libera Triestina, supra, is distinguishable from the case at bar. Appellant states that the complaint in Taylor v. Navigazione Libera Triestina, supra, showed that the foreign corporation was within California, while in the present case the proposed amendment states that National commenced doing business in 1952. However, an examination of appellant's complaint reveals the allegation that National conspired with other defendants to monopolize the motion picture industry since 1935. The continued acts of conspirators in California to secure a monopoly is transacting business in California within the statute, Section 6501, providing for service of process on foreign corporations. Giusti v. Pyrotechnic Industries, 9 Cir., 1946, 156 F.2d 351. As the trial court stated in the present case (Tr. p. 82), '* * * this is true whether it was done directly by National Theatres Corporation or acting through its agents, the other members of the alleged conspiracy,' citing Giusti v. Pyrotechnic Industries, supra.
 
 
 40
 As in Taylor v. Navigazione Libera Triestina, supra, 95 F.2d at page 910, the allegations of appellant's complaint informed the court that National was doing business in California before 1952. It was thus amenable to process before that time. The appellant was in no way hindered in suing National before 1952. As a result, there would be no tolling of the statute of limitations upon this ground, even if the motion to amend had been granted.
 
 In summary:
 
 41
 (a) The appellant is a proper party to bring this action. Her interest as a landlord is not too remote to permit recovery, as the complaint alleges direct wrongful acts to her damage. A recoverable claim is stated upon the facts pleaded, indicating supposed wrongful acts which have allegedly injured appellant's reversionary interest;
 
 
 42
 (b) The statute of limitations in a civil conspiracy runs from the commission of the last overt act alleged to have caused damage. The only overt act herein alleged sufficient to bring the complaint outside the bar of the California statute of limitations is the closing of the Larchmont Theatre 44 days before the lease expired;
 
 
 43
 (c) The same means must be used to achieve the same conspiracy by the same defendants in order to toll the running of the statute of limitations under 15 U.S.C.A. § 16. Whether the statute of limitations bars the action in question may be determined in advance of trial;
 
 
 44
 (d) If a foreign corporation is doing business in California, it is amenable to service in California, even if it has not registered to do intrastate business pursuant to California law. The statute of limitations is available as a defense to such a foreign corporation.
 
 
 45
 Our rulings in this case predicate appellant's position in court upon the allegation that the closing of the Larchmont Theatre forty-four days before the end of the term of the lease was an overt act causing damage. It is this pleading that preserves appellant's claim from being barred on its face by the statute. Upon proof, recovery may be had for damages suffered which are attributable to overt acts occurring within the statutory period. Here there is only one such live act. The others alleged were spent to appellant's and appellant's predecessor's knowledge long before this suit was filed in 1951. Every time appellant and her predecessors executed a contract for a rental less than a fair rental she knew or should have known the nature and extent of the damages attributable to overt acts occurring in 1932, 1933, 1935, 1936, and 1937. The statute of limitations has run upon all of these, and hence appellant's recovery may be only for proven damages caused, if at all, by the act of November 17, 1952-- the early closing of the theatre.
 
 
 46
 In its discretion, the trial court may desire to have the issue of whether or not the November 17, 1952, act was an overt act causing damages presented prior to other issues at trial. First Unitarian Soc. of Chicago v. Faulkner, 1875, 91 U.S. 415, 23 L.Ed. 283; Kimball Laundry Co. v. United States, 8 Cir., 1948, 166 F.2d 856, 862; Momand v. Paramount Pictures Distributing Co., D.C.D.Mass.1941, 36 F.Supp. 568. The trial court could thereupon determine whether the appellant has presented enough evidence upon this point to warrant the question going to the jury, and the case itself going any further.
 
 
 47
 Reversed and remanded for appropriate further action in accordance with this opinion.
 
 
 
 [1]
 § 1. 'Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *.'
 § 2. 'Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * * *.'
 
 
 [2]
 'Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.'
 
 
 [3]
 United Artists Corp. v. Masterpiece Productions, 2 Cir., 1955, 221 F.2d 213, stated Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1955, 220 F.2d 105, adopted too strict a reading of Rule 54(b). In reality, the court in United Artists Corp. v. Masterpiece Productions, supra, was disagreeing with our interpretation of 'claim', not Rule 54(b). This Circuit holds that 'claim' means a cause of action. Karseal Corp. v. Richfield Oil Corp., 9 Cir., 1955, 221 F.2d 358; Sidebotham v. Robison, 9 Cir., 1954, 216 F.2d 816, 830-831; Patten v. Dennis, 9 Cir., 1943, 134 F.2d 137. Also see Gold Seal Co. v. Weeks, 1954, 93 U.S.App.D.C. 249, 209 F.2d 802, for a similar view. We recognize our interpretation of 'claim' is contrary to the holding in Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774
 
 
 [4]
 ' § 338. Within three years:
 '1. An action upon a liability created by statute, other than a penalty or forfeiture.'
 
 
 [5]
 'A final judgment or decree * * * rendered in any civil or criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, This section shall not apply to consent judgments or decrees entered before any testimony has been taken
 'Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof.'
 
 
 [6]
 ' § 351. Exception, where defendant is out of the state. If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action.'
 
 
 [7]
 ' § 6400. Filing copy of articles with Secretary of State. A foreign corporation shall not transact intrastate business in this State until it has filed with the Secretary of State a copy of its articles duly certified by the Secretary of State or other official of the place under the laws of which it was created, * * *.'
 
 
 [8]
 ' § 6501. Order for service on Secretary of State. * * * if no agent has been designated and if no one of the officers or agents of the corporation specified in Section 6500 can be found after diligent search and it is so shown by affidavit to the satisfaction of the court or judge, then the court or judge may make an order that service be made by personal delivery to the Secretary of State or to an assistant or deputy secretary of state of two copies of the process together with two copies of the order, except that if the corporation to be served has not filed the statement required to be filed by Section 6403 then only one copy of the process and order need be delivered but the order shall include and set forth an address to which such process shall be sent by the Secretary of State
 
 
 [9]
 ' § 22. District in which to sue corporation
 'Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.'